No. 86-375

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

STATE OF MONTANA,

       Plaintiff and Respondent,

-vs-

FLOYD LENARD SPURLOCK,

       Defendant and Appellant.

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Stephen C. Moses and Charles F. Moses
argued, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
James M. Scheier, Asst. Atty. General, Helena
Susan Loehn argued, County Attorney, Libby, Montana

Submitted:  January 13, 1987

Decided:  February 3, 1987

Filed: FEB 3 - 1987

*Ethel M. Harrison*

————————————————
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Floyd Lenard Spurlock, defendant and appellant, was charged by information filed in the District Court of the Nineteenth Judicial District, Lincoln County, with the offense of deliberate homicide for the killing of Ron Meyer. On a plea of not guilty, trial commenced on June 5, 1986. Following deliberations, the jury returned a verdict of guilty. Spurlock was sentenced to sixty-five years' imprisonment, with an additional five years imposed for use of a dangerous weapon. Spurlock appeals both the verdict and the sentence.

Spurlock and three friends entered the Eagles Club Bar in Libby, Montana, at about 10:00 p.m. on December 13, 1985. They danced with several women who were there. Later, Spurlock got into an argument with some of the women they were dancing with and called them derogatory names. One of the women, Monica Obermeyer, pushed him into a chair. Three bouncers rushed to the area to prevent any further fighting. At some point soon after this, Spurlock was seen by several people in the bar with a knife in his hand. He also began making threatening remarks to the effect of: "If my buddies and I do not get out of here, I will start slicing people up."

Spurlock was asked to leave, and he complied. However, on the way out, he got into an argument with Ron Meyer. Spurlock hit Meyer, and Meyer fell. Spurlock then ran out of the bar. He was seen wiping something off and putting it into his pocket. Meyer was taken to a back room of the bar. It was discovered that he had been stabbed, and he could not be revived. It was determined later that he was killed by a sharp instrument which pierced the breast bone and penetrated his heart.

Sheriff's deputies arrived at the Eagles Club at about 10:50 p.m. Spurlock's friends were taken into custody, but Spurlock was no longer there. He had gone to the Caboose Bar, only a short distance away, and then went home.

Officers arrested Spurlock at his home later that same night. Upon searching the residence, they found a pair of jeans in the bottom of his clothes hamper. They were wet and contained his wallet in a rear pocket. The right front pocket of the jeans was stained with blood. A white T-shirt belonging to Spurlock was also found, and it was stained with blood. The homicide weapon was never found.

Spurlock denied any involvement in the stabbing and denied having a pocket knife; however, one of his friends testified that he had seen Spurlock with a pocket knife on the day of the stabbing. Dr. Black examined Spurlock after he was arrested. He found abrasions on the knuckles of Spurlock's right hand which indicated that Spurlock had hit something with his fist. He also had a cut on the middle finger of his left hand.

Appellant raises two issues on appeal:

1. Is the verdict supported by substantial credible evidence?

2. Was appellant properly sentence?


I

Appellant contends that the verdict is based solely on circumstantial evidence. Thus, the State is required to prove beyond a reasonable doubt that the circumstances are consistent with defendant's guilt and inconsistent with his innocence and are incapable of explanation on any other reasonable hypothesis than that of guilt. Appellant argues that since there are other explanations for the stabbing which are just as consistent with appellant's innocence as

with his guilt, the State failed to meet its burden of proof. He also contends that there was insufficient evidence to support the verdict.

We are at a loss to understand how appellant can argue that this case is one of circumstantial evidence. The amount of direct evidence presented was overwhelming.

Sometime after appellant was pushed in the bar and immediately prior to the time that Meyer was stabbed, no less than seven witnesses saw appellant with a knife in his right hand. Two of those witnesses were standing right next to appellant when they saw the knife in his hand. At the same time, many witnesses heard appellant making threats that someone was going to get hurt. Three witnesses testified to seeing appellant hit Meyer. Other witnesses testified that they saw Meyer and appellant make contact. Immediately after being hit by appellant, Meyer fell to the floor. Appellant then ran out of the bar, and one witness testified to seeing him wipe something off and put it into his pocket.

Officers arrested appellant on the night of the murder. They found the jeans and T-shirt he had been wearing that night. A forensic serologist performed tests on those items and testified to her findings at trial. She testified that there were blood stains on the right front pocket of the jeans and also on the T-shirt. The blood on the jeans could have come from either appellant or Meyer.

The standard of review on questions of sufficiency of the evidence to support a verdict was recently set forth in State v. Cornell (Mont. 1986), 715 P.2d 446, 447, 43 St.Rep. 505, 506:

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

4

From all the evidence presented, a reasonable trier of fact could have concluded that appellant was guilty of the deliberate homicide of Meyer.

## II

Appellant next contends that he was improperly sentenced. He argues that the five years enhancement that was imposed for the use of a dangerous weapon was error and constituted a double sentencing.

This argument is completely without merit. Section 46-18-221, MCA, provides for enhancement of sentence when a defendant has used a dangerous weapon in the commission of any offense. This statute does not define a separate offense, but is merely an enhancing statute. Indeed, it cannot be applied except to enhance the main offense. Consequently, its use does not result in multiple sentencing for a single criminal offense. See State v. Davison (1980), 188 Mont. 432, 614 P.2d 489.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

5