No. 96-513

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE THE LICENSE REVOCATION OF
JEFFREY H. GILDERSLEEVE


APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Steve Fletcher, Bulman Law Associates,
Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General;
Brenda Nordlund, Assistant Attorney General;
Helena, Montana

Tom Orr, Assistant City Attorney, Missoula, Montana


Submitted on Briefs: June 19, 1997

Decided:    July 17, 1997
Filed:


_____
Clerk


Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Jeffrey H. Gildersleeve, petitioned the District Court for the Fourth
Judicial District in Missoula County for a hearing at which to consider

reinstatement of

his motor vehicle operator's license pursuant to   61-8-403, MCA.  After hearings, the

District Court upheld the revocation.  Gildersleeve appeals.  We reverse the judgment of

the District Court and remand this case to the District Court for proceedings consistent

with this opinion.

The following issues are presented on appeal:

1.   Did the District Court err when it concluded that Gildersleeve refused to submit to testing pursuant to   61-8-403, MCA?

2.   Did the District Court err when it concluded that it lacks jurisdiction to consider the constitutionality of    61-8-402 and -403, MCA?

FACTUAL BACKGROUND

On August 28, 1995, Officer Jeff Dobie of the Missoula Police Department arrested Jeffrey H. Gildersleeve for driving under the influence of alcohol or drugs after

Gildersleeve made an illegal left turn.  Gildersleeve admitted that he had consumed one

shot of whiskey.  He cooperated with Officer Dobie and performed the field sobriety tests

which were administered.  Officer Dobie contended that because of Gildersleeve's slurred

speech, red eyes, and poor performance in the field sobriety tests, he arrested him and

transported him to the Missoula police station, where he asked Gildersleeve to take a breath test.

The breath analysis results indicated a 0.00 blood alcohol content.  Officer Dobie

then requested that Gildersleeve submit to a blood test.  Gildersleeve objected to the

blood test for ethical reasons, a fear of needles, and a concern that he could thereby

contract the AIDS virus.  The Missoula Police Department does not offer a urine test, and neither Officer Dobie nor Gildersleeve raised it as an alternative.  Pursuant to   61-8-

402, MCA, Officer Dobie seized Gildersleeve's license and Gildersleeve's driving privileges were suspended for ninety days.

On September 27, 1995, Gildersleeve filed a notice of appeal of the revocation of

his license in the District Court pursuant to   61-8-403, MCA.  He maintained that he was not under the influence of alcohol or drugs, and that he did not refuse to submit to

the blood test.  In addition, he informed the District Court of his intent to challenge the

constitutionality of    61-8-402 and -403, MCA.  After a hearing on November 1, 1995, the District Court concluded that it lacked jurisdiction to consider Gildersleeve's constitutional challenges.  After a second hearing on May 31, 1996, the District Court

concluded that Officer Dobie had reasonable grounds to arrest Gildersleeve and that Gildersleeve had refused to submit to the blood test.

ISSUE 1

Did the District Court err when it concluded that Gildersleeve refused to submit to testing pursuant to 61-8-403, MCA?

The District Court held that it was the burden of the petitioner to prove the invalidity of his license revocation and that Gildersleeve had not met that burden. Specifically, with regard to the issue of whether Gildersleeve refused to submit to a blood test, the District Court found that he had refused.

The District Court's opinion and order was entered on June 18, 1996. On July 11, 1996, we decided Wessell v. State (1996), 277 Mont. 234, 921 P.2d 264. In Wessell, the petitioner was placed under arrest for driving under the influence of alcohol. He cooperated with the investigating officer and submitted to a breath test, which was unsuccessful because the testing instrument failed. He was then asked to submit to a blood test, but declined on the basis that he had a great fear of needles. He volunteered to submit to a urine test; however, none was available at the Glendive Police Department. Therefore, his license was revoked based on his refusal to submit to the blood test. The District Court affirmed the revocation of his license; however, we reversed and held that:

In the present case, it was not contested that Wessell had a valid fear of needles which prevented him from being able to submit to a blood test and therefore we accept this as stipulated. The record shows that he was willing to consent to a test for alcohol but was prevented from doing so by a psychological inability to perform resulting from his disabling fear of needles, which he immediately disclosed to the officer. We determine that under the facts of this case, this psychological inability to perform the test is the equivalent of a physical disability which precludes an individual from participating in or completing a valid test regardless of their willingness.

Wessell, 277 Mont. at 240, 921 P.2d at 267-68.

Although the facts of record in this case are similar to those in Wessell, they are not identical. Neither did the parties have an opportunity to present or test evidence based on the standard established in Wessell. Finally, the District Court did not have the opportunity to consider whether, based on the record in this case, Gildersleeve was prevented from submitting to a blood test based on a psychological inability to perform resulting from a disabling fear of needles.

Therefore, we vacate the judgment of the District Court and remand to that court for further consideration in light of our decision in Wessell. Either party may supplement the record to the extent necessary to assist the court in its determination.

The State contends that as a result of our decision in Wessell this Court has unintentionally eliminated the petitioner's burden of proving an inability to perform a blood test and placed the burden on the State to prove there was no such inability. The

State, therefore, urges this Court to reconsider its decision in Wessell and more clearly
articulate the factors an officer should consider when deciding whether a suspect is
"unable" to perform or submit to a test.

The State's interpretation of Wessell, however, is unsupported by the plain
language in that decision. We clearly noted that in that case it was uncontested that
Wessell had a valid fear which prevented him from being able to submit to a blood test.
We accepted that fact as stipulated. There was no reason to discuss the petitioner's
burden, or a shifting of the burden, because the facts were not disputed. The rule
remains, as it has been, that "[t]he burden of proof falls upon the appellant to prove the
invalidity of the State's action, rather than require the State to justify its act
of revocation.
Jess v. State (1992), 255 Mont. 254, 259-60, 841 P.2d 1137, 1140.

For these reasons, we decline the invitation to reconsider our decision in Wessell
v. State.

                              ISSUE 2

Did the District Court err when it concluded that it lacks jurisdiction to consider
the constitutionality of    61-8-402 and -403, MCA?

The District Court's determination that it lacks jurisdiction over this matter is a
conclusion of law. We review conclusions of law to determine whether they are correct.
Bayleat Law v. Pettit (Mont. 1997), 931 P.2d 50, 52, 54 St. Rep 77, 78.

Section 61-8-403, MCA, which sets forth the scope of review from a driver's
license revocation, states in relevant part:

(4) (a) The court shall take testimony and examine the facts of the
case, except that the issues are limited to whether:

(i) a peace officer had reasonable grounds to believe that the person
had been driving or was in actual physical control of a vehicle upon ways
of this state open to the public while under the influence of alcohol, drugs,
or a combination of the two;

(ii) the person was placed under arrest; and

(iii) the person refused to submit to the test or tests.

Section 61-8-403(4)(a), MCA. We have strictly construed this language and held that the
Legislature clearly intended to limit the issues that a court may consider on appeal
pursuant to the statute. See Thompson v. Department of Justice (1994), 264 Mont. 372,
871 P.2d 1333 (removing from consideration the issue of whether the initial report was
properly sworn); Blake v. State (1987), 226 Mont. 193, 735 P.2d 262 (denying authority
to consider the issue of hardship as a mitigating factor in granting a restricted or
probationary license).

The District Court erred, however, when it equated limitation on its authority to

consider factual issues other than those specified by statute with limitation on its authority to consider the constitutionality of the statue itself. The two exercises of authority are inherently different and emanate from distinct sources.  The District Court's authority to consider the constitutionality of a statute derives from the basic constitutional notion of separation of powers, while its authority to review factual issues related to a driver's license revocation comes from the Legislature.

"[T]he Constitution vests in the courts the exclusive power to construe and interpret legislative Acts, as well as provisions of the Constitution."  State v. Leslie (1935), 100 Mont. 449, 455, 50 P.2d 959, 962.  Inherent in this power is the responsibility to determine whether a particular law conforms to the Constitution. Powell v. McCormack (1969), 395 U.S. 486, 89 S. Ct. 1944, 23 L. Ed. 2d 491. "[I]t is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity to the Constitution." Powell, 395 U.S. at 506, 89 S. Ct. at 1956, 23 L. Ed. 2d at 508. Thus, we hold that the District Court erred when it concluded that  61-8-403, MCA, limits its jurisdiction to consider constitutional challenges to that statute.

The State's contention that a declaratory judgment pursuant to   27-8-101 to -313, MCA, should constitute Gildersleeve's sole opportunity to challenge the constitutionality of the statute is unfounded.  Declaratory relief is not meant to displace otherwise available remedies.  In In re Matter of Dewar (1976), 169 Mont. 437, 548 P.2d 149, we stated:

The purpose of declaratory relief is to liquidate uncertainties and controversies which might result in future litigation and to adjudicate rights of parties who have not otherwise been given an opportunity to have those rights determined. However, it is not the true purpose of the declaratory judgment to provide a substitute for other regular actions.

Dewar, 169 Mont. at 444, 548 P.2d at 153-54. Here, Gildersleeve has already been affected by   61-8-402 and -403, MCA, and thus, his challenge to the statute is appropriately made during the course of his regular appeal pursuant to  61-8-403, MCA.

Although this Court has the ultimate authority and responsibility to interpret Montana's Constitution, we are primarily a court of review.  State v. Finley (1996), 276 Mont. 126, 915 P.2d 208. Furthermore, resolution of this case on a constitutional basis should be avoided where it may be unnecessary. In State v. Still (1995), 273 Mont. 261, 263, 902 P.2d 546, 548, we held that:

This Court has repeatedly recognized that "courts should avoid constitutional issues whenever possible." Wolfe v. State, Dept. of Labor & Ind. (1992), 255 Mont. 336, 339, 843 P.2d 338, 340 (citing Ingraham v. Champion Intern. (1990), 243 Mont. 42, 46, 793 P.2d 769, 771). Certain constraints govern the Court's power to determine the constitutionality of statutes. Among those constraints is the principle that we will not rule on the constitutionality of a legislative act if we are able to decide the case without reaching constitutional considerations. Ingraham, 793 P.2d at 771; Wolfe, 843 P.2d at 340 (citing Taylor v. Dept. of Fish, Wildlife & Parks (1983), 205 Mont. 85, 90, 666 P.2d 1228, 1231); see also State ex rel. Hammond v. Hager (1972), 160 Mont. 391, 400, 503 P.2d 52, 57.

Because of our resolution of Issue 1, and the possibility that Gildersleeve's appeal could be resolved without the necessity of addressing the constitutional issues which have been raised; and because if it is necessary to address those constitutional issues which relate to the constitutionality of 61-8-402 and -403, MCA, as applied, further development of the factual record may be appropriate; we decline to address those issues at this time, but remand to the District Court for the appropriate resolution of those issues, if necessary.

For these reasons, the judgment of the District Court is vacated, and this case is remanded to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE
/S/ JIM REGNIER
/S/ WILLIAM E. HUNT, SR.
/S/ W. WILLIAM LEAPHART