JUSTICE HUNT
delivered the Opinion of the Court.
¶1 Following a jury trial in the Eighth Judicial District Court, Cascade County, George Paul Guillaume (Guillaume) was found guilty of felony assault and criminal trespass to property, a misdemeanor. The District Court sentenced Guillaume to ten years in prison for felony assault, an additional five years in prison for use of a weapon, and six months in prison for criminal trespass to property, the six-month term to run concurrently with the fifteen-year term. Guillaume appeals that part of the court’s order sentencing him to ten years in prison for felony assault and an additional five years in prison for use of a weapon on the basis of double jeopardy. We reverse and remand for resentencing.
¶2 The sole issue on appeal is whether application of the weapon enhancement statute, § 46-18-221, MCA, to a conviction for felony assault, a violation of § 45-5-202(2)(b), MCA, violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution?
¶3 The following facts are not disputed. On July 6,1996, at approximately 3:15 a.m., Jodi Vellucci (Vellucci), a neighbor of Robert Bielen (Bielen), observed through her window a light in the unattached garage of Bielen. She also noticed that the walk-in door to the garage was open. Vellucci immediately told Bielen what she had seen, and Bielen went to the garage to investigate. As Bielen approached the *226 garage, Guillaume exited the garage. Guillaume saw Bielen, held up a hammer that he had taken from the garage, and exclaimed, “I’ll kill you.” Guillaume swung the hammer at Bielen’s head. Bielen reacted in such a way that the hammer missed his head but struck his hand. A struggle ensued and Guillaume escaped by jumping the fence. Guillaume was later apprehended by the police. Bielen told the police that he thought Guillaume was going to kill him when Guillaume swung the hammer at his head.
¶4 Guillaume was charged by information with felony assault, a violation of § 45-5-202(2)(b), MCA, and criminal trespass to property, a misdemeanor, a violation of § 45-6-203, MCA. A jury trial was held on January 27-28,1 997, and Guillaume was found guilty on all counts. On February 27, 1997, the District Court held a sentencing hearing. The court sentenced Guillaume to ten years in prison for felony assault, an additional five years in prison for use of a weapon pursuant to § 46-18-221, MCA (hereinafter the weapon enhancement statute), and six months in prison for criminal trespass to property, the six-month term to run concurrently with the fifteen-year term. The court stated that the reasons for the sentence were Guillaume’s prior criminal history and the severity of the offense. The court emphasized the fact that Guillaume threatened and tried to kill Bielen with a hammer.
¶5 On March 11,1997, Guillaume filed a motion to reconsider sentencing on the ground that application of the weapon enhancement statute to his felony assault conviction violated the double jeopardy provision of the Montana Constitution. The court denied Guillaume’s motion and issued its sentencing order on March 21, 1997. This appeal followed.
¶6 Does application of the weapon enhancement statute, § 46-18-221, MCA, to a conviction for felony assault, a violation of § 45-5-202(2)(b), MCA, violate the double jeopardy provision of Article II, Section 25 of the Montana Constitution?
¶7 The denial of Guillaume’s motion for reconsideration of his sentence involves a legal question that we review de novo to determine whether the District Court’s interpretation of the law is correct. State v. Zabawa (1996), 279 Mont. 307, 310, 928 P.2d 151, 153.
¶8 The double jeopardy provision of Article II, Section 25 of the Montana Constitution provides in part: “No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction.” This provision protects defendants from both multiple prosecutions *227 for offenses arising out of the same transaction, and multiple punishments imposed at a single prosecution for the same offense. State v. Savaria (1997), 284 Mont. 216, 222, 945 P.2d 24, 28. See also State v. Vargas (1996), 279 Mont. 357, 360, 928 P.2d 165, 167; State v. Nelson (1996), 275 Mont. 86, 90, 910 P.2d 247, 250. In the instant case, Guillaume maintains that application of the weapon enhancement statute to his conviction for felony assault violated his right to be free from multiple punishments for the same offense.
¶9 Guillaume was sentenced to ten tears in prison for commission of felony assault. The statute defining felony assault provides in relevant part:
A person commits the offense of felony assault if the person purposely or knowingly causes ... reasonable apprehension of serious bodily injury in another by use of a weapon.
Section 45-5-202(2)(b), MCA. Guillaume’s sentence was enhanced by five years pursuant to the weapon enhancement statute. That statute provides in relevant part:
A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly ... used a ... dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years .... An additional sentence prescribed by this section shall run consecutively to the sentence provided for the offense.
Section46-18-221(1) and (4),MCA. Guillaume asserts thathadhenot used a weapon in the struggle with Bielen, his actions would have fit the charge of misdemeanor assault, the penalty for which is imprisonment of no more than six months or a fine of no more than $500. See Section 45-5-201(l)(d) and (2), MCA (“A person commits the offense of assault if he ... purposely or knowingly causes reasonable apprehension of bodily injury in another”). Guillaume asserts that the only factor raising his charge from misdemeanor assault to felony assault was his use of a weapon. Based on this distinction between misdemeanor and felony assault, Guillaume argues that the felony assault statute provides by its own terms for enhanced punishment for use of a weapon, and that application of the weapon enhancement statute to his conviction for felony assault effectively punished him twice for use of a weapon. This, Guillaume argues, is exactly what the double jeopardy provision was designed to prohibit.
*228 ¶10 In arguing his position, Guillaume does not dispute that the weapon enhancement statute is constitutional on its face. Guillaume acknowledges that this Court has repeatedly held that Montana’s weapon enhancement statute is a sentencing factor, and does not create a separate crime or element of a crime in violation of the protection against double jeopardy. State v. Krantz (1990), 241 Mont. 501, 512, 788 P.2d 298, 305 (citing State v. Forsyth (1988), 233 Mont. 389, 423, 761 P.2d 363, 384; State v. Spurlock (1987), 225 Mont. 238, 241, 731 P.2d 1315, 1317; State v. Davison (1980), 188 Mont. 432, 445, 614 P.2d 489, 497). However, Guillaume argues that the weapon enhancement statute is unconstitutional as applied to him. See State v. Crisp (1991), 249 Mont. 199, 202, 814 P.2d 981, 983 (A defendant may challenge a statute’s constitutionality by arguing that it is unconstitutional on its face or that it is unconstitutional as applied to his particular situation). Specifically, Guillaume argues that when use of a weapon is an element of the underlying offense, as it is in this case, it is a violation of double jeopardy to also apply the weapon enhancement statute.
¶ 11 Guillaume acknowledges that in Zabawa, a case involving facts nearly identical to the instant case, this Court held that application of the weapon enhancement statute to a conviction for felony assault did not violate the double jeopardy provision of the Fifth Amendment to the United States Constitution. Zabawa, 279 Mont. at 316, 928 P.2d at 156-57. However, Guillaume notes that we left unresolved in Zabawa the question whether application of the weapon enhancement statute to a conviction for felony assault violates the double jeopardy provision of Article II, Section 25, of the Montana Constitution. Zabawa, 279 Mont. at 310, 928 P.2d at 153. Our reasons for not addressing Zabawa’s double jeopardy challenge under the Montana Constitution were as follows:
[Zabawa] claims no greater protection from double jeopardy under Article II, Section 25 of the Montana Constitution than under the Fifth Amendment to the United States Constitution .... [Zabawa has] relied entirely on federal interpretations under the United States Constitution during oral argument; in Zabawa’s view, those interpretations supported his argument under that Constitution. Accordingly, we address only the double jeopardy protection afforded under the United States Constitution, leaving for resolution in a future case ... whether Article II, Section 25 of the Montana Constitution provides greater protection from double jeopardy than is provided by the United States Constitution.
*229 Zabawa, 279 Mont. at 310, 928 P.2d at 153.
¶12 Guillaume states that the instant case now presents the question left open in Zabawa. Guillaume claims that Article II, Section 25 of the Montana Constitution affords greater protection from double jeopardy than does the Fifth Amendment to the United States Constitution. In support of his claim, Guillaume undertakes an analysis of legislative intent similar to that employed in Zabawa, see Zabawa, 279 Mont. at 313-16, 928 P.2d at 155-57, and ultimately concludes that, in enacting the weapon enhancement statute, the Montana Legislature did not intend to impose multiple punishments where the underlying offense requires proof of use of a weapon as an element of the offense.
¶13 We agree with Guillaume that Article II, Section 25 of the Montana Constitution provides greater protection from double jeopardy than is provided by the United States Constitution. However, we do not reach this conclusion on the basis of legislative intent. Zabawa is distinguishable from and has no bearing upon the instant case. In Zabawa, this Court was faced with a question of federal constitutional law and was bound to follow federal court decisions interpreting that law. Zabawa, 279 Mont. at 310, 928 P.2d at 153. Specifically, we were bound to follow Missouri v. Hunter (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535, wherein the United States Supreme Court held that, where legislative intent is clear, cumulative punishments imposed in a single trial do not violate the double jeopardy clause of the Fifth Amendment to the United States Constitution. Hunter, 459 U.S. at 366, 103 S.Ct. at 678. The Court reasoned:
With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.
Hunter, 459 U.S. at 359, 103 S.Ct. at 678. Instructed by Hunter, this Court inquired into whether, in enacting the weapon enhancement statute, the Montana Legislature intended to impose multiple punishments where the underlying offense requires proof of the use of a weapon as an element of the offense. Zabawa, 279 Mont. at 313, 928 P.2d at 155. We answered that question in the affirmative. Zabawa, 279 Mont. at 316, 928 P.2d at 156-57.
¶14 Unlike Zabawa, the issue in the instant case is one of Montana constitutional law.
*230 The [Montana] Constitution vests in the courts the exclusive power to construe and interpret legislative Acts, as well as provisions of the Constitution. Inherent in this power is the responsibility to determine whether a particular law conforms to the Constitution.
In re License Revocation of Gildersleeve (1997), 283 Mont. 479, 484, 942 P.2d 705, 708 (citations omitted). As Justice Leaphart noted in his dissent to Zabawa-.
Constitutional guarantees are not mere vessels to be left empty or filled at the whim of the legislative branch. Rather, they have intrinsic meaning which is independent of any legislative intent.
Zabawa, 279 Mont. at 323-24, 928 P.2d at 161. Thus, pursuant to the doctrine of separation of powers embodied in Article III, Section 1 of the Montana Constitution, and pursuant to our duty to safeguard the rights and guarantees provided by this state’s Constitution, and notwithstanding legislative intent, we must apply the protection afforded by the double jeopardy provision of Article II, Section 25 of the Montana Constitution.
¶15 This Court has long embraced the principle that the rights and guarantees afforded by the United States Constitution are minimal, and that states may interpret provisions of their own constitutions to afford greater protection than the United States Constitution. State v. Johnson (1986), 221 Mont. 503, 512, 719 P.2d 1248, 1254 (citations omitted). In interpreting the Montana Constitution, this Court has repeatedly refused to “march lock-step” with the United States Supreme Court, even where the state constitutional provision at issue is nearly identical to its federal counterpart. See e.g., Ranta v. State, 1998 MT 95, 288 Mont. 391, 958 P.2d 670 (holding that sentence review is a “critical stage” to which the right of counsel attaches); State v. Bullock (1995), 272 Mont. 361, 901 P.2d 61 (holding that a person may have a reasonable expectation of privacy in land that extends beyond the curtilage of his residence); State v. Johnson (1986), 221 Mont. 503, 719 P.2d 1248 (holding that defendant’s statement that he would like to talk to “somebody” invoked his right to counsel).
¶16 Thus, as we have done in the past, we again refuse to march lock-step with the United States Supreme Court in interpreting the protection afforded by the double jeopardy provision of Article II, Section 25 of the Montana Constitution. We hold that Article II, Section 25 of the Montana Constitution affords greater protection against multiple punishments for the same offense than does the Fifth *231 Amendment to the United States Constitution. We further hold that application of the weapon enhancement statute to felony convictions where the underlying offense requires proof of use of a weapon violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution.
¶17 In so holding, we are guided by the fundamental principle embodied in double jeopardy. Simply put, double jeopardy exemplifies the legal and moral concept that no person should suffer twice for a single act. Although simply stated, the concept of double jeopardy does not appear to be simply applied. One commentator notes:
The double jeopardy clause has been the source of more confusion than enlightenment. The reason for this is to be found in the history of double jeopardy, in its varied sources, in its uneven development, [and] in its deceptively simple phraseology. It is easier to pay lip service to a principle than to give that principle life and meaning.
Jay A. Sigler, Double Jeopardy: The Development of a Legal and Social Policy 117 (1969). While several cases have presented courts with difficult double jeopardy questions, this case is not one of them. Under the facts of the instant case, double jeopardy is simply applied.
¶18 The only factor raising Guillaume’s charge from misdemeanor assault to felony assault was his use of a weapon. We interpret this distinction between the two offenses, and the different penalties imposed by each offense, as the legislature’s way of punishing a criminal defendant for use of a weapon in committing an assault. Thus, when the weapon enhancement statute was applied to Guillaume’s felony assault conviction, Guillaume was subjected to double punishment for use of a weapon: once when the charge was elevated from misdemeanor assault to felony assault, and again when the weapon enhancement statute was applied. We agree with Guillaume that this form of double punishment is exactly what double jeopardy was intended to prohibit.
¶19 The State argues that the double jeopardy clause of the Montana Constitution does not protect against multiple punishments for the same offense because such protection is not explicit in the clause. We disagree with the State’s argument because it runs counter to prior precedent, see Savaria, 284 Mont. at 222, 945 P.2d at 28, and Vargas, 279 Mont. at 360, 928 P.2d at 167, and the principle that the rights and guarantees afforded by the United States Constitution are minimal. See Johnson, 221 Mont. at 512, 719 P.2d at 1254. In North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, *232 2076, 23 L.Ed.2d 656, 664-65, the United States Supreme Court held that the double jeopardy clause of the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense. Because the double jeopardy clause of the federal constitution protects against multiple punishments for the same offense, the double jeopardy clause of the Montana Constitution provides at least the same protection. Moreover, it makes sense that “double jeopardy applies to multiple punishments because, if it did not, then the prohibition against multiple prosecutions would be meaningless; a court could simply achieve the same effect as a second prosecution by resentencing a criminal defendant after the defendant had served all or part of an initial sentence.” Ex Parte Lange (1873), 85 U.S. 163, 175, 21 L.Ed. 872, 878, 18 Wall. 163.
¶20 Second, the State argues that application of the weapon enhancement statute to Guillaume’s felony assault conviction results in only one punishment, not two. As support for its position, the State cites Davison, wherein this Court held that the weapon enhancement statute is a sentencing factor, and does not create a separate offense. Davison, 188 Mont. at 447, 614 P.2d at 498. On this basis, the State argues that “any supposed” protection against multiple punishments is not implicated in this case. Further, the State argues that the separation of powers doctrine prohibits this Court from infringing on the Montana Legislature’s exclusive power, embodied in Article V, Section 11 of the Montana Constitution, to determine appropriate punishments for criminal offenses.
¶21 Although the State has correctly cited the above authorities, its reliance on them is misplaced. Davison is inapposite to the issue being decided in this case. The issue is not whether Guillaume committed two offenses by use of a weapon; rather, the issue is whether Guillaume was punished twice for use of a weapon. On this point, the same commentator cited above summarizes the thoughts of many double jeopardy critics:
The need for clarification of double jeopardy is indubitable. One necessary distinction is that between double prosecution and double punishment. In determining this question, inquiry should be concentrated upon the nature of the defendant’s conduct, [and] the physical character of the criminal transaction, rather than upon the number of offenses arising from the transaction. The protection against multiple punishment has as its rationale the belief *233 that the defendant’s punishment should be commensurate with but not greater than his criminal liability.
Sigler, supra, at 193.
¶22 The argument that application of the weapon enhancement statute to a felony assault conviction results in only one punishment for use of a weapon, rather than two, is one of pure semantics. Were we to accept this argument, we would in effect strip double jeopardy of all meaning. We refuse to merely pay lip service to the fundamental principle of double jeopardy.
¶23 Although it is true that the Montana Constitution confers upon the legislature the power to set appropriate punishments for criminal acts, see Art. V, Sec. 11, Mont.Const., this power is not unbridled. The double jeopardy clause of Article II, Section 25 of the Montana Constitution prohibits the legislature from imposing on criminal defendants multiple punishments for the same offense. As previously stated, this Court is vested with the exclusive power to review whether a particular legislative act conforms to the Constitution. Gildersleeve, 283 Mont. at 484, 942 P.2d at 708. We conclude that our holding in the instant case does not violate the separation of powers doctrine.
¶24 The State further argues that any perceived double jeopardy violation in this case is really a product of legislative drafting. The State asserts that a fifteen-year prison term could have been imposed on Guillaume had the legislature increased the prison time for felony assault within the felony assault statute and excluded the offense of felony assault in the application of the weapon enhancement statute. The State argues that the legislature’s ability to modify the felony assault penalty to achieve the same result that is achieved in the present sentencing scheme demonstrates that no double jeopardy violation exists in this case. We disagree. The fact that modification of the felony assault statute could achieve the same result as the present sentencing scheme does not mean that no double jeopardy violation exists in this case.
¶25 We reverse the District Court’s sentencing order and remand for rehearing and resentencing consistent with this opinion.
JUSTICES REGNIER, LEAPHART and TRIEWEILER concur.